PER CURIAM.
This is the second time these parties, Rebecca R. Grelier (“the wife”) and Maximilian J. Grelier III (“the husband”), have been before this court.[1] In Grelier v. Gre *670 tier, 44 So.3d 1092 (Ala.Civ.App.2009) (“Grelier ”), the wife appealed from the trial court’s January 8, 2007, judgment of divorce. In that judgment, the trial court applied a 40% minority/marketability discount to the husband’s business interests in multiple closely held business entities to reduce the value of those business interests from $1,008,514 to $602,108.40. The trial court also awarded the wife rehabilitative alimony for 36 months, but it failed to reserve the right to award the wife periodic alimony in the future.
Analogizing the situation to that of a dissenting shareholder who was not a willing seller, see Ex parte Baron Servs., Inc., 874 So.2d 545 (Ala.2003), this court concluded that the trial court should have determined the value of the husband’s multiple interests in the closely held business entities as “a going concern without applying any discounts.” Grelier, 44 So.3d at 1098. As a result, we reversed the trial court’s judgment and remanded the cause for the trial court “to reconsider its property division and its award of alimony in light of the proper valuation of the husband’s business interests.” 44 So.3d at 1099.
On remand, the trial court divided the marital property as it had before. In its February 24, 2010, judgment on remand, the trial court stated:
“1. ... Except for an equitable division of the household goods, furniture, and furnishings accumulated by the parties during the marriage; an honorary membership in ‘The Ledges,’ a local country club; and one-half (½) of the net proceeds from the sale of the parties’ marital residence, after payment to the Wife of the sum of $200,000, as additional property settlement, the only remaining marital assets awarded to the Husband consisted of the ownership interests in various business entities in which the Husband is a minority stockholder in closely-held businesses, in which he participates with his father, his brother, and a friend. This court does not find that it would be fair or equitable to award the Wife any of those business interests. A review of the evidence presented to this court at final hearing does not indicate any other financial resources from which this court could provide any further property award to the Wife, nor does this Court find from the evidence that the Husband possesses sufficient income to pay any additional alimony or additional property award to the Wife, after payment of the child support, periodic alimony, additional periodic alimony for Wife’s education, attorney’s fees for the Wife, 76% of the fees for the Special Master, the monthly payments on the Wife’s automobile, and the other marital and business debts, ordered by this court to be paid by him. Any further award made to the Wife by this court on remand, either as a property award or as additional periodic alimony, would therefore require the Husband to either borrow money and go deeper in debt, or sell some or all of the business interests awarded to him in said Final Decree, which would necessarily involve the sale of a minority interest in closely-held corporations.
“2. This court finds that the property division and the award of alimony previously made by this court ... are fair and equitable, even considering the proper valuation of the Husband’s business interests, as ordered by the Alabama Court of Civil Appeals.
“3. The following provisión is added to Paragraph 12(A) of the Final Decree of Divorce ...:
“ ‘This court reserves the right to modify the periodic alimony herein awarded to the Wife, on petition filed *671 by the Wife prior to the expiration of the periodic alimony award herein made to the Wife.’
“4. Except as herein modified, the terms and provisions of the Final Decree of Divorce ... entered by this court on January 8, 2007, as amended by the Order on Pending Motions entered by this court on February 27, 2007, shall remain in full force and effect, on remand to this court by the Alabama Court of Civil Appeals.”
The wife again timely appealed, asserting that, on remand, the trial court ignored this court’s mandate by dividing the parties’ marital property exactly as it had previously; she also asserts that the trial court erred in not reserving the issue of alimony after the expiration of the initial 36-month period relating to rehabilitative alimony. We affirm in part and reverse in part.

Analysis

This court must consider the issues of property division and alimony together when reviewing the decision of the trial court. Albertson v. Albertson, 678 So.2d 118, 120 (Ala.Civ.App.1995). “[T]here is no rigid standard or mathematical formula on which a trial court must base its determination of alimony and the division of marital assets.” Yohey v. Yohey, 890 So.2d 160, 164 (Ala.Civ.App.2004). In Lackey v. Lackey, 18 So.3d 393 (Ala.Civ.App.2009), this court stated:
“ “When dividing marital property and determining a party’s need for alimony, a trial court should consider several factors, including “ ‘the length of the marriage, the age and health of the parties, the future employment prospects of the parties, the source; value, and type of property owned, and the standard of living to which the parties have become accustomed during the marriage.’ ” Ex parte Elliott, 782 So.2d 308 (Ala.2000) (quoting Nowell v. Nowell, 474 So.2d 1128, 1129 (Ala.Civ.App.1985)) (footnote omitted). In addition, the trial court may also consider the conduct of the parties with regard to the breakdown of the marriage.’ ”
18 So.3d at 401 (quoting Baggett v. Baggett, 855 So.2d 556, 559 (Ala.Civ.App.2003)).
In Roberts v. Roberts, 802 So.2d 230, 235 (Ala.Civ.App.2001), this court set forth the standard of review applicable to a trial court’s division of property in a divorce action:
“A trial court’s division of property following an ore tenus presentation of evidence is presumed correct on appeal and will not be reversed absent a plain and palpable abuse of discretion. A property division is required to be equitable, not equal. In fashioning a property division, the trial court considers the parties’ earning abilities; their probable future prospects; their ages, health, and station in life; the duration of the marriage, and the conduct of the parties with regard to the breakdown of the marriage.”
(Citations omitted.)
We first address the wife’s challenge to the trial court’s acceptance of the special master’s valuation of the husband’s business interests. After nearly two years and several amendments to the valuation, the special master concluded that the husband’s business interests were valued at $1,003,514. The wife presented her own expert who testified that the information relied upon by the special master was either outdated or incomplete and, therefore, that the special master’s valuation of the husband’s business interests was incorrect. The wife’s expert, however, offered no opinion as to the value of the husband’s *672 business interests, and the wife did not present appraisals of the business entities to assist the trial court in valuing the husband’s business interests. The trial court accepted the special master’s valuation.
We conclude that no error is presented. The trier of fact is authorized to resolve conflicting expert testimony. See, e.g., Taylor v. Goodyear Tire & Rubber Co., 37 So.3d 813, 822 (Ala.Civ.App.2009) (recognizing trial court’s discretion in a bench trial to resolve conflicts among expert testimony). Further, the wife presented no alternative valuation for the trial court’s consideration. Thus, we find no reversible error as to the trial court’s valuation of the husband’s business interests.
The wife next asserts that the trial court ignored this court’s mandate on remand by not altering its division of the marital property. In Ex parte Alabama Power Co., 431 So.2d 151, 155 (Ala.1983), the supreme court, quoting 5 Am.Jur.2d Appeal and Error § 991 (1962), stated:
“ ‘It is the duty of the trial court, on remand,.to comply strictly with the mandate of the appellate court according to its true intent and meaning, as determined by the directions given by the reviewing court. No judgment other than that directed or permitted by the reviewing court may be entered .... The appellate court’s decision is final as to all matters before it, becomes the law of the case, and must be executed according to the mandate, without granting a new trial or taking additional evidence....’”
In Grelier, supra, we instructed the trial court to reconsider its division of the marital property and its award of alimony in light of the proper valuation of the husband’s business interests. In its February 24, 2010, judgment, the trial court expressly stated that it had considered the value of the husband’s business interests without applying any marketability or minority discounts to that value and had found it equitable to divide the marital property as it had before. In light of that language, we must conclude that, on remand, the trial court complied with this court’s mandate in Grelier, supra.
We next address the wife’s argument that the trial court’s property division was inequitable. She argues that the trial court erred in concluding that any additional property award to her beyond that already awarded to her would
“require the Husband to either borrow money and go deeper in debt, or sell some or all of the business interests awarded to him ... which would necessarily involve the sale of a minority interest in closely-held corporations.”
She asserts that the trial court could have made a more equitable property division by awarding her a portion of the husband’s business interests, i.e., by making an “in-kind” award of those interests. She also asserts that the trial court could have ordered a sale of the husband’s business assets and then divided the net proceeds between the parties or could have awarded her alimony in gross. We review the trial court’s division of the marital estate to determine if it was, in fact, inequitable. If so, we then consider the wife’s suggested means of awarding her additional property-
Based upon our reading of the trial court’s judgment, the wife received marital property valued at $212,000 (proceeds from the sale of the marital residence in the amount of $200,000, at a minimum, and her vehicle, valued at $12,000). The trial court ordered the wife to pay marital debts totaling $169,682 ($59,417 to her mother and stepfather; $68,930 to her mother; $8,800 to her mother; $20,000 to her fa *673 ther; $1,109 to Parisians department store; $137 to American Express credit card; and $11,289 to the special master). Subtracting the debts the trial court ordered the wife to pay from the value of the marital assets the trial court awarded to the wife, we determine that the wife’s net property award from the marital estate totaled $42,318.[2]
We conclude that the trial court awarded the husband marital assets totaling $1,003,514 (the value placed on his business interests)[3] and ordered the husband to pay marital debts totaling $207,476 ($18,789 for the wife’s vehicle; $4,944 for his credit-card debt; $59,417, representing one-half of the joint debt owed to Dianna and Jack Norman; $40,000 to Betty La-das; $30,000 to Remy Gross; $18,575 to the wife’s attorney; and $35,751 to the special master). Thus, the husband’s net property award of a sum certain totaled $796,038.
The husband, however, was also ordered to pay certain contingent debts and liabilities, which the trial court clearly factored into its division of the parties’ marital property. The trial court ordered the husband to pay “all debts owed by him personally from any business entity herein awarded to him, including the $975,000 debt owed to Bodega Bay and the $84,000 owing to Wachovia Bank as a result of the home buy-back at The Ledges.”[4] Thus, the trial court ordered the husband to pay contingent debts totaling $1,059,000.
In Mosley v. Mosley, 747 So.2d 894 (Ala.Civ.App.1999), we concluded that contingent assets and contingent liabilities were not to be included in the computation of the parties’ net worth but should be calculated separately and awarded separately. See 747 So.2d at 901 (discussing with approval the method used in Florida courts to compute parties’ net worth, by which the court calculated and awarded contingent assets and liabilities separately). Thus, the trial court should have determined the value of the parties’ marital estate without reference to their contingent assets and liabilities; after determining the net worth of the parties in that fashion, the trial court then should have *674 considered their contingent assets and liabilities separately.
On appeal, the wife argues that the trial court exceeded its discretion in “us[ing] this contingent debt to deny the [w]ife a fair and just property division.” The wife, however, did not specifically argue to the trial court that the valuation of the marital estate was flawed under governing caselaw, and she has failed to provide this court with citations to authorities regarding the proper method to be applied by a trial court in valuing a marital estate.[5] We, therefore, deem the wife’s challenge to the valuation of the marital estate based on the contingent debt to be waived on appeal. See Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003) (“ ‘[I]t is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undeli-neated general propositions not supported by sufficient authority or argument.’ ” (quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994), citing in turn Spradlin v. Spradlin, 601 So.2d 76 (Ala.1992))). As a result, we accept the trial court’s valuation of the parties’ marital estate.
When the trial court’s award to the husband of marital assets is measured against the liabilities the trial court ordered the husband to pay, we conclude that the husband’s net property award totaled -$262,962 ($1,003,514 less liabilities of $1,266,476). Considering the facts of this case as presented on appeal and the presumption of correctness that attaches to a trial court’s property division following an ore tenus presentation of the evidence, we conclude that the property division does not rise to the level of a plain and palpable abuse of the trial court’s discretion. See Roberts, supra. Accordingly, we preter-mit consideration of the wife’s arguments that the trial court should have considered alternative ways of increasing her property award.
The wife next asserts that the trial court erred in failing to reserve the right to award her periodic alimony in the future. The trial court addressed this issue in its February 24, 2010, judgment on remand by stating:
“3. The following provision is added to Paragraph 12(A) of the Final Decree of Divorce ...:
“ ‘This court reserves the right to modify the periodic alimony herein awarded to the Wife, on petition filed by the Wife prior to the expiration of the periodic alimony award herein made to the Wife.’ ”
The wife asserts that the trial court committed reversible error by not reserving the right to award her periodic alimony in the future. We agree.
In Giardina v. Giardina, 987 So.2d 606 (Ala.Civ.App.2008), this court concluded that the trial court in that case had erred by failing to reserve the issue of permanent periodic alimony after awarding the wife rehabilitative alimony. This court stated:
“We acknowledge that some of our prior decisions have implicitly rejected the idea that a spouse who has been awarded rehabilitative alimony must seek a modification of the award before the expiration date of the rehabilitative-alimony period or be forever barred from receiving periodic alimony. In Fowler v. Fowler, 773 So.2d 491, 495 *675 (Ala.Civ.App.2000), overruled on other grounds by J.L. v. A.Y., 844 So.2d 1221, 1225 (Ala.Civ.App.2002), this court stated:
“ “We have previously held that when the court awards rehabilitative alimony based on the earning ability of the parties, their probable future prospects, and the length of the marriage, it is reversible error for the court not to reserve the right to award periodic alimony in the future. See Robinson v. Robinson, 628 So.2d 300 (Ala.Civ.App.1993); Sammons v. Sammons, 598 So.2d 941 (Ala.Civ.App.1992).’ ”
Giardina, 987 So.2d at 620.
In this case, although the trial court awarded the wife rehabilitative alimony for a period of 36 months to allow her time to update her professional license and skills and to obtain employment, the evidence established that the wife had not worked in the field of accounting since giving birth to the parties’ children and that her license as a certified public accountant (“CPA”) had expired. She testified that regaining her CPA license would require many hours of continuing-education credits and that she was unsure whether she could maintain employment in that professional field while raising two children. The only other employment the wife held during the parties’ marriage was operating various home-based businesses from which she earned a small profit. Thus, it was unknown whether the wife would be able to obtain employment sufficient to allow her to support herself without the husband’s assistance and to maintain a lifestyle similar to the one she had enjoyed during the parties’ marriage. See, e.g., Yohey v. Yohey, 890 So.2d at 160 (discussing the purpose of periodic alimony); and Dees v. Dees, 390 So.2d 1060, 1064 (Ala.Civ.App.1980) (accord).
Under those circumstances, it was error for the trial court not to reserve the right to award the wife permanent periodic alimony in the future. Giardina, supra; and Fowler, supra. We, therefore, reverse the trial court’s judgment on the issue of periodic alimony and remand the cause for the trial court to enter a judgment consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and MOORE, J., concur.
THOMAS, J., concurs in part and concurs in the result, with writing.
BRYAN, J., concurs in the result, without writing.
PITTMAN, J., concurs in the result only, with writing.

. The factual background of this case is set forth in Grelier v. Grelier, 44 So.3d 1092 (Ala.Civ.App.2009).

. The wife also was awarded rehabilitative alimony in the amount of $1,500 for 36 months to begin the month after the marital residence was sold. She also was awarded additional rehabilitative alimony to cover educational expenses necessarily incurred by her to renew her license as a certified public accountant, not to exceed the sum of $10,000; the husband's obligation for this additional rehabilitative alimony terminated 36 months after the entry of the original divorce judgment. Those awards of support are not considered in our calculation of the wife’s property award.

. Because the amount of the proceeds, if any, to be awarded to the husband from the sale of the marital residence cannot be determined from the record and was contingent upon the sales price of the residence less associated repair costs and other expenses, we have not credited the husband with an award for that asset.

.It was undisputed at the trial that the husband was jointly and severally liable for the $975,000 and the $84,000 debts but that, at the time of the trial, he was not servicing those debts. Although it had no legal obligation to do so, CG Partners, one of the businesses in which the husband held a significant interest and his most valuable business interest, was making the payments on those notes as they came due. The husband testified that, if CG Partners was unable to make those payments, he and his father would be called upon to do so. Thus, the contingent nature of those debts was undisputed. The special master, however, testified that it was inappropriate to include those debts in the valuation of CG Partners and that such liabilities were chargeable against the husband personally.

. Additionally, the wife’s arguments to the trial court on this issue raised accounting issues, which, although perhaps valid under general accounting principles, do not defeat the trial court’s discretion in effectuating an equitable property division. Roberts, 802 So.2d at 235 (discussing the trial court’s broad discretion in dividing marital property).